Well, we have enough lawyers, we think. We need more chairs over there or have some more good counsel. Numbers are not indicative of a result here. All right, we will just take judicial notice of that fact. All right. All right. Mr. Bergeron. All right, sir. You're up. Thank you. Good morning, Your Honors. May it please the court. I will be addressing issues one and two, which one is that the district court aired as a matter of law and granting judgment to Rolling Plains and issue two, which is the district court aired in granting summary judgment to Rolling Plains. On the failure of essential purpose and warranty claims to Agco Finance. My co-counsel, Ms. Britton, will be addressing the third issue, which is the district court improperly granting Rule 12b6 motion to dismiss various other claims. The question that Rolling Plains cannot answer and the district court chose not to explore is how, quote, gremlins, demons, and maintenance issues leads to 990 machine hours. The district court instructed the jury that fraud is the concealment or misrepresentation of a specific fact that is material to a transaction. Here, that specific fact was the number of machine hours, engine hours on the combine, which Rolling Plains represented to Mr. First as 400 rather than 990. Now, Mr. First concedes that the record is replete with evidence of the combine's maintenance issues as far back as May of 2016. However, nothing in the record ties those maintenance issues or those gremlins or demons, as Mr. Virgil Berry testified, to Rolling Plains' specific engine hours misrepresentation. For those reasons, Your Honor, the district court should not have granted judgment as a matter of law to Rolling Plains on Mr. First's claims of failure of essential purpose and fraud. The jury verdict appears to ask them the correct question related to fraud, right, accrual. But I'm sure you know pretty well there was a lot of discussion and confusion in the charge conference about Oklahoma's various statute of limitations. And then everyone seems to say, well, let's simplify it down to when did they know about injury, which arguably equals gremlins, right? But when they actually get instructed, do you know off the top of your head what's the instruction that the jury was given that you say it answered without any evidence? Yes, Your Honor. I have the instruction at table. I'd be happy to bring it up on rebuttal. But what I can tell you that I remember is the district court specifically noted six instances where fraud can occur. All of them were that the person had knowledge of a specific fact and did not disclose that fact. The person had a duty to speak and did not disclose that. And so this is sort of the issue with the… The jury actually asks a question on just this, right? Exactly, Your Honor. And that's where the disconnect is. Because if the jury asks the question, and this was something that came up in the charging conference as well, was when the district court decided that the jury should issue a specific date. Council stated to the district court, well, that's a problem because all of everything that we've been referring to in relation to the fraud has been expressed in relative terms. And as I've gone through the record, the testimony, the two days of testimony at trial, the only dates after the purchase of the combine that were specific dates, meaning a month, a day, and a year, were the purchase of the combine on March 29th of 2016, the signed purchase installment and warranty on April 13th of 2016, and the expiration date of the warranty, April 13th of 2017. Those were the only specific dates. And so when the district court asked the jury to find a specific date, the jury didn't have anything to look to in the evidence. If the court had asked the jury instead… Right, but then the jury comes back and says, you tell me the date. Do you remember what the district court said? The district court said August of 2019, which again was not a specific date. And so it didn't conform to the question that the jury was asking, which we would propose to the court as a significant error here, which is indicative of the fact that the jury's verdict, at least as to the specific date, is unsupported by any evidence whatsoever. They went back to the close of the basic protection, if you will. They had a period of protection guaranteed, if you will. And as I saw it, the jury latched on to that particular date, which was on its face. It's not obvious why. That's absolutely right, Your Honor. And as I said, that's the only date that's in there that the jury could have latched on. But there's no connection. There's no evidentiary connection, factual connection, legal connection between the date that the warranty expired and Mr. First's specific knowledge, either constructive or actual, that the combine actually had 990 engine hours as opposed to 400. That's the question that the jury had to answer. It's not the existence of maintenance issues or whether Mr. First was having problems with the combine. And for that reason, Your Honor, the only thing that the district— I guess it's very sensible. If they interpreted should have known, like, if you want to get protection, you should know by this date. This is the end of the time. You won't be under your warranty anymore. So they are answering should have known. And, Your Honor— That's when you would want to know. I think that presents sort of a legal and a policy issue, because under that ruling, under essentially the jury's ruling here, it imposes a duty upon a buyer to be suspicious. A buyer generally in contract law has the ability to approach a contract in good faith, to say this person is dealing with me in good faith. And so if by the expiration of that warranty date, Mr. First should have known that there was some issue, even— A whole period of time going after that, that's one of the—and that was one of the confusions I had about what the jury came up with. But what exactly did the district judge instruct the jury as to—what guidance did he give the jury as to—when he asked the question, when he put the question to them? Your Honor, it is a single sentence in the record, and the district court says in Question 3, you are to determine the date of the fraud, and so this should be whatever you all agree to. End of explanation. So this doesn't give the jury anything to go on. Now, in the interest of time, I'd like to just move to my second issue, which is summary judgment for ag co-finance was improper, primarily because there were genuine issues of material fact. The claims were warranty of description and failure of essential purpose. Those claims lie against ag co-finance on a theory of agency, and there are two bases under Oklahoma law, actual authority or apparent authority. The record is replete with questions as to actual authority. They're undisputed that Rolling Plains signed the installment contract for ag co. Rolling Plains prepared and submitted customer's finance application. All of these were something that should have been submitted to the jury because under Oklahoma law, the existence of an agency and the existence of the scope of that agency are fact questions. So there was considerable evidence in the record that at least said that there was something that should have been and could have been presented to the jury. As to apparent authority, interestingly, the district court admitted that there was a genuine issue of material fact on the existence itself of apparent authority. But what the district court did was it unnaturally or improperly narrowed the scope of the apparent authority instead of submitting the question to the jury. What we know from the summary judgment record is that Ms. Henry, who was a representative of Rolling Plains, made representations to Mr. First that she had the authority to discuss the warranty that ag co-finance was going to issue, to discuss the financing that ag co-finance was going to issue, to discuss certification as pre-owned for the combine, and the knowledge and understanding of the equipment. All of this was in the summary judgment record that the district court just decided was not important and overlooked entirely when the district court should instead have submitted the question to the jury. Similarly, the contract itself bears ag co-finance's name at the top, but was signed only by Rhonda Henry, who was an employee of Rolling Plains. Rolling Plains handled all the finance paperwork, the entire sales process. When Mr. First had issues with the combine and he called ag co-finance, who was supposedly the holder of this warranty, ag co-finance directed him to Rolling Plains. All of these are issues that the jury should have been able to review, to have been able to look at, specifically because the question is a fact question that the jury should have determined. And legally, in Oklahoma, overt acts for apparent authority are not required. It can also be by omission, and we cited in brief American National Insurance Company versus Fatality Bank. Similarly, Rolling Plains is going to argue to this court, they did in brief, that they limited their agency scope or relationship because of a statement in the installment agreement. But it can't do that when there's conflicting inferences that can be drawn, which were here and should have been presented to the jury. And I will reserve the remainder of my time for rebuttal. Thank you. All right. Thank you, sir. Ms. Britton. May it please the court, Jay Britton on behalf of the appellant, Mr. First. The district court erred here when it dismissed all of Mr. First's fraud claims against ag co-corp, ag co-service, and ag co-finance. And it also erred when it dismissed Mr. First's constructive fraud, negligent misrepresentation, and fraudulent inducement claim against Rolling Plains. One of the purposes of Rule 9b is to give fair notice to defendants of the fraudulent actions. And here, the Second Amendment complaint did give fair notice to the defendants because it alleged enough specific facts to give fair and reasonable inferences that the defendants committed fraud. It specifically identifies the actors here. Jack Hanley was the authorized representative of Rolling Plains. Rolling Plains was an authorized representative of ag co-corporation. Ag co-corporation controlled the certified pre-owned program. And as such, Rolling Plains must rely on ag co-corporation to perform inspections on the machinery and to qualify for the certified pre-owned program. Additionally, ag co-service and ag co-finance share in the profits with ag co-corporation. The Second Amendment complaint also identifies the specific misrepresentations and omissions. Here, Rolling Plains told Mr. First that the total machine hours were 438 hours. That's a specific misrepresentation. It turned out that the total machine hours were not that amount. They were much higher. Rolling Plains failed to disclose the repair history and engine replacement. The misrepresentations were made by Hanley. That's a specific speaker of that misrepresentation. And they were done with the express—those misrepresentations were done with the express knowledge, consent, approval, and authorization of ag co-corporation. And they are tied that way. The Second Amendment complaint also alleges that ag co. knew about the true hours and repair history because they specifically authorized those repairs. The complaint also alleges that the defendants took part in—that it required specialized knowledge and training to roll back the hours, which infers that there was specific intent there to actually change the hours on the combine. And for the when and where here, the Second Amendment complaint states the dates that the repairs were made in November 2011 and November 2012. Ag co-corporation authorized those repairs in North Dakota. Additionally, it states that the misrepresentations by Jack Hanley and Rolling Plains were made at the time of the sale in 2016, which is the when and where there. And the Second Amendment complaint also alleges that Mr. First relied on those misrepresentations. It alleges that there was a duty by ag co-corp and Rolling Plains to disclose that information. And alternatively, even if this court disagrees that the Second Amendment complaint was not sufficient, the district court erred in not giving a chance to amend there. The Second Amendment complaint was—it was amended—let me back up. So the first pleading was filed in Oklahoma State Court, and it was removed, and the First Amendment complaint was filed in Texas State Court. And so the only instruction between those two were from another district court, and there were substantial changes there. They referred to defendants collectively, and they made changes there that represented the parties by name. And so then the Second Amendment complaint was amended only because for the limited purpose of amending an Oklahoma violation, Consumer Protection Act violation, to a Texas one. So there wasn't the, you know, failure—repeated failures to amend the complaint here. And that's why the district court should have allowed the amendment there. And lastly, it wouldn't have caused any delay to allow amendment because the district court allowed an amendment as to Rolling Plains' actual fraud claim there. So allowing an amendment to all defendants and all fraud claims would not have caused any delay. Thank you. All right. Thank you. We'll hear first from Rolling Plains. Mr. Wilson. Good morning. May it please the Court, my name is Brandon Wilson, and with me is Christopher Murphy, and we represent Rolling Plains Implement Company. I feel like I really need to apologize to the Court because I have a diabetic monitor on my arm that went off in here about an hour and a half early, and I felt like it was somewhat obvious. I tried to play it by the book. I had all my alarms shut off, but the monitor overrode the alarm, which I guess is probably what it should do, or overrode my notification setting on my phone. So I just wanted to say that I appreciate the Court's patience with me on that. No worries. We appreciate your candor and the fact that you're here. You're good. Thank you. Your Honor, I think just to kind of cut to the chase on this, this is a case that was tried to a jury, and we have, since the beginning of this case in district court, have believed on behalf of Rolling Plains that this was a statute of limitations case, that the case was barred by the application of Oklahoma's statute of limitations. Just a question of curiosity. This lawsuit was filed when? September of 2020. The implement was purchased when? April of 2016. And we're in June the 4th? What's the date? 3rd? We are, Your Honor, 2024. 2024. Well, I mean, curiosity just gets the best that something purchased in 2016, it's been to a full jury trial, et cetera, et cetera. I don't know how much it costs, but there have been no efforts to resolve this case short of an appeal. I mean, it's undisputed that there was a problem with how much mileage, if you will, or whatever it was with them. Is that the only undisputed part of the case? From the only appeal raised to this court is the statute of limitations issue. But, I mean, it's undisputed there was a gap between whatever the, you know, like buying a car that they say, you know, has no mileage, driven by a sweet little old lady, and it turns out, you know, it's got other. But I'm saying is it undisputed there was a problem with the combine itself? Oh, I think that that, from our position, Mr. First experienced several problems with it. Yeah, I mean, that was established in the trial court, and we've never denied that. All right. So the rest of it then takes off. What did he know, and when did he know it? Well, I think that's right. If I may answer that question you're hitting at, my concerns about this case, because this case, Mr. First, testimony is clear, started kicking the tires, so to speak, of this combine in October and November of 2015. He's not sure he wants to do it. He looks at it. He gets in it. Over the next three or four or five months, eventually in the March or April time frame, my client's representative and Mr. First finally come to terms on a little bit of a lowered price that incentivizes Mr. First to buy it, and so he buys it. That's part of the evidence that was before the trial. So we're talking in 2022 evidence that was by then six or seven years old. But that's only part of the evidence. The other part of the evidence was, and a big part of the evidence was my client's interactions with the former owner of that combine, a gentleman by the name of Pius Head, who was also a custom harvester of wheat and other crops. And so the questions were asked of my client, who's about 90 years old, you know, what were the discussions between you and Mr. Head back when he bought it back in 2010-11 time frame? What were the maintenance problems the combine had in 2010-11, 12, 13, 14 time frames? Of course, a lot of that my client doesn't remember. Pius Hyde is dead by now. At the time of the trial, he had already passed away. So all the policies and purposes behind the statute of limitations, I mean, this case fits the bill maybe more than any case I've ever had. I appreciate the fact that we had a jury decide this, and I understand that the jury checked the box on the fraud. My own view is that fraud verdict was fatally poisoned by the passage of time. I mean, it wasn't with the best evidence that could have been had the claim— We have before us now statute of limitations as to fraud. Correct. And the nice thing is you were there. I was. And you objected to the district court's answer. I did. The jury question. I did object to that, yes. And a point of fact, when the jury asked the question mid-deliberations, of course, the judge brought all the lawyers in and said, you know, what do we do with this? And my stock answer when that's happened in the trials that I've had before, and actually the plaintiff's trial counsel agreed that, because none of us know how this is going to break, right? So we said, you know, we both agreed that the answer should be you have before you all the facts and evidence you need. But the— He said he just nailed the moment where they go to Butler. He did nail the moment, and I thought that— That would be within the statute of limitations. So what I noticed was in the jury charge conference, there's a lot of uncertainty about which is the appropriate statute of limitations. Contractual, warranty, fraud. Pages and pages of discussion. Everyone agrees to simplify it down. But it's very hard to explain how after the judge says to them it's August of 2019, they answer that question back, it's 2060. Well, I think that question is something that I've had a question about myself, so I'll just try to answer your question the best way I can. The judge did not answer the question. The judge said Mr. First testified as to the August 19th date. That was his response to the jury. The jury, as being the fact finders and the judge of credibility, could say we agree that that must have been what happened or we don't think Mr. First is credible on that. I wasn't there. None of us were in the room to know why the jury reached the date that they did. What, besides the end of the warranty, occurred on the day they stated was the day he should have known? I think the answer to the question and I'll— It's just what's in the trial record that could possibly make explicable that time. Yeah, we're sort of exegeting the record. No, but just anything that would say that at that time First would have awareness of fraud. And I know you're pushing back against fraud, but how could he have known anything about machine hours then? Well, that's—I appreciate the question. Yeah. To me, that's the real crux of it. By Memorial Day of 2016, it was well established—it's in our brief and you've probably read it— Yes, of course. that there were gremlins in the machine. Yes. And Virgil Berry testified that this machine never worked like it should have. Mr. First testified that he's been working on combines since he was the age of 14 and knows all about them. He's worked on every make and model that you know of. But never one with a computer. Well, he does say that. That's true, Your Honor. But my point in all that is somebody who's kicked the tires for four or five months before then and then has— I guess I agree. Here's—just to give you—so you can push back. Absolutely, that early date, they know they've got equipment problems. But do they know someone lied to them about the age of the machine? Well, I think the point is, is at some point there has to be a red flag raised in John Craig First's mind that when he's having gremlins and demons in the machine by 2016, he has to say, hold up, I've been sold something that I wasn't expecting. Right, but this is to the credit of all parties. When I read the trial record, they are all people who just shake hands and that's it. They don't jump to the thought that they could have been betrayed. Well, but at some point under Oklahoma law, he has a duty to reasonably investigate once he's on notice. And one of the cases that I'd like to read to the court from the Oklahoma Supreme Court is a case in which the Oklahoma law says—I will find it for you, Your Honors. Properly limited, a discovery rule should encompass the precept that acquisition of sufficient information which, if pursued, would lead to the true condition of things, that will be held as sufficient knowledge to start the running of the statute of limitations. This rule obtains because a reasonably prudent person is required to pursue his claim with diligence. Statutes of limitations were not designed— I mean, I can see that. You know, it's kind of a horned book for all of us, you know, in terms of a regular tort. But usually, like, when fraud is there, you know, it's kind of king's eggs. You know, you're in a different zone. So does that case, because I'm obviously not familiar with Oklahoma law, but, I mean, what you read, does that apply equally, not just to, you know, a tort claim? You know, reasonable notice, you should inspect, et cetera, in the typical delictual context, as we would say. But when there's fraud, normally, that is particularity and pleading, it just augurs up a whole other dimension. So how does Oklahoma law fit that, or does what you read apply to negligence and, say, fraud claims? Well, you have the alleged—of course, we disagree with that, but I understand that that's the case here. We have the alleged fraud in the sale of the—then you also have what's called fraudulent concealment, which fraudulent concealment, after the fraud took place, if I then take steps to conceal the things that happened, well, then, of course, the statute of limitations doesn't begin to run. But we don't have any allegation in this case of any kind of fraudulent concealment. In fact, the testimony by Mr. Handley was that if John Crick first had come to ask him for any of the Agco service history records that go all the way back to Butler Machinery, he would have given to him, but it was never asked of him, all of those types of things. So, obviously, we believe in this particular case that the discovery rule applies to this case as when he knew or reasonably should have known, and the asking—see, my time's up. If I may just finish this report real quick. Yeah, please do. I believe what's being asked for here is some kind of mathematical certainty about this piece of evidence plus this piece of evidence must equal fraud, but I think the jury is allowed to use its common sense, weigh the inferences. It could conclude from the evidence that was presented that Mr. First was aware of significant unexpected problems and could have pursued that, and so he was aware, should have been aware by— Of all the things he knew or should have known, whatever, when would you say is the latest point where, quote, I know you disagree with fraud, but whatever degree of knowledge he should have had, it's just not working right, but something more than that. What's the earliest or latest date you would say, absolutely, that's the date that the statute would have begun to run? Well, and again, talking about statute of limitations, it's when he knew or reasonably should have known, and I think Judge instructed correctly on that point. I think the jury was allowed to reasonably—to conclude that he reasonably should have known. I think the jury should have said Memorial Day 2016. That is in the record about five or six times. The jury—this was asked to me about the April date. The jury, I think, picked the April date because they had assumed that that would get worked out. If it wasn't, that was on Mr. First. It was on the hook because he knew he had big-time problems with the combine and said it over and over again. He has to do something about it, and he was aware of it, and he didn't until, you know, September 2020. Okay. All right. Thank you, sir. Thank you. All right. All right. I please the Court. Jim Vogt. I represent Agco Finance in this matter. My five minutes, I'll try and touch on a few of the items as to why we think the district court decision should be affirmed. Agco Finance is a company that finances purchase of equipment throughout the United States and Canada. They don't manufacture equipment. They don't warranty equipment. They don't issue any warranties on any equipment. They don't own any equipment, but the only time they own equipment is when someone defaults on a financing contract and they are forced to repossess and take possession of their collateral on that. Other than that, they don't own equipment. Agco Finance kind of operates similar to when you go to Automobile to buy a vehicle, and you select the vehicle and cite it on a price, and then you get to the financing part of it, and, you know, a bank or Ford Motor Credit or Alley enters a picture in that situation. In this case, John Craig first, he went to Rolling Plains and looked at a used combine and looked at it several times and then made a decision to purchase the combine. It was not until after he had made that decision to purchase the combine that Agco Finance enters the picture in this case. He could have used his own bank. He could have used a different finance company, but he decided to use Agco Finance to finance his purchase. Mr. First admitted that he never talked to anyone at Agco Finance until after he had made the decision to purchase the combine. He admits he signed the retail installment contract, and I would direct Your Honor's attention to a portion of that contract, which reads as follows. Buyers acknowledge that seller is not the agent of ASINI, that any representations or warranties made by seller are not binding on ASINI, and that seller does not have authority to modify any term or provision of this contract subsequent to assignment of this contract by seller. And I would submit to Your Honors that that is pretty much standard language you're going to see in any equipment finance arrangement by any creditor that does that type of financing. It's pretty much that kind of language in that the finance company is trying to say, we don't warranty this equipment. The seller has no right to make representations on our behalf. Despite that language, Mr. First is pursuing a claim against Agco Finance for breach of warranty. He claims that the argument that Rolling Plains had either actual authority or apparent authority to bind Agco Finance to any alleged representations that Rolling Plains made regarding a warranty on the used combine. And I would direct the Court's attention to this finding by the district court where he says, Agco Finance's involvement in the purchase was exclusively on the financing side. Nothing in the record indicates Agco Finance gave first any reason to believe Rolling Plains had authority to warrant the machinery on behalf of Agco Finance. Agco Finance did not grant Rolling Plains explicit authority to offer a warranty on behalf of Agco Finance. In fact, the expressed language in the contract states Agco Finance is not bound by any warranty made by Rolling Plains. Even first-sighted reliance refers only to Rolling Plains' ability to bind Agco Finance in a financing agreement, not a warranty. The Court finds that even if there is apparent authority, the warranty is outside the scope. Therefore, Agco Finance is entitled to summary judgment. Agco Finance's obligation pursuant to this contract was to finance it. They did finance the purchase of the contract, allowed Mr. First to make payments under that financing contract. As a matter of fact, they even agreed on two occasions to extend the payment terms because he was having difficulty making the payments. Eventually, he defaulted on that agreement and is still in default as far as I know. So it is to your honors that the district court was correct in its decision in granting summary judgment, and Agco Finance would ask this Court to affirm that judgment of the district court. Thank you, sir. Agco Corporation, Mr. Carroll. Yes, Your Honor. May it please the Court, my name is Jake Carroll, and I represent the appellants Agco Corporation and Agco Service. The district court correctly found that plaintiff's second amended complaint failed to state a claim for fraud and did not plead facts sufficient to illustrate the who, what, when, and where and how of the alleged fraud. As to the who, in his briefing, the appellant concedes that the second amended complaint does not identify a specific representative from Agco Corporation. In his reply, though, Mr. First represents that Curtis was an Agco Service manager, although the second amended complaint never makes such an allegation in the two paragraphs, 203 and 204, that mention Curtis. Rather, the second amended complaint identifies both Curtis and Jack Hanley as representatives of all seven defendants. Otherwise, Mr. First concedes in his brief that he did not acquire the combine from Agco Corporation or Agco Service, he never had any interaction with Agco Corporation or Agco Service, and that Agco never made any affirmative misrepresentations to him. Mr. First argues that the complaint sufficiently alleged that Agco Corporation and Agco Service had knowledge of the true repair history and hours of the combine, but did not disclose that fact before his purchase, simply a claim of fraud by omission. But again, the second amended complaint did not allege any facts that would give rise to a duty of disclosure from Agco Corporation or Agco Service to him, just conclusions that a duty existed and that Agco breached it. Mr. First's brief also recognizes that in cases concerning omissions of fact, Rule 9b requires the plaintiff to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omissions made the representations misleading. But the second amended complaint doesn't allege facts showing when, if ever, it was incumbent upon Agco Corporation or Agco Service, which never had any dealings with Mr. First, to disclose any information to him at all, nor how Agco should have done so. For these reasons, the District Court correctly determined that Mr. First failed to plead his fraud claims against Agco Corporation and Agco Service with particularity and dismissed those claims with prejudice. The District Court also correctly denied Mr. First's leave to amend his fraud claims based on the reasoning that his claims were incurable because he had been allowed to amend his complaint twice, once with the guidance of a prior dismissal order from the District of Oklahoma. Leave to amend can be properly denied when there is a valid justification, and the Supreme Court and this Court have recognized time and time again that repeated failure to cure a pleading defect and futility of amendment are valid justifications for denying leave to amend. Thus, the District Court did not abuse its discretion in denying plaintiff leave to amend his fraud claims against Agco Corporation and Agco Service for a third time, and this Court should affirm the District Court's order as to that issue as well. All right. Thank you, sir. Thank you. All right. Back to you, Mr. Bergeron. Thank you, Your Honors. I have points of rebuttal as to each issue. Were you able to find the jury instruction that was given? Oh, I did, Your Honor, and what they said, I apologize. I know that you specifically asked for that, and I did not pull them. But Counsel for Rolling Plain says this is a statute of limitations case. We agree, and the issue with statute of limitations that as an affirmative defense, it is their burden of proof to establish it, and they did not do that. Judge Higgins, to your point, what is in the trial record showing April 13th of 2017 is the only date? That is only the expiration of warranty, and they could not point to anything else. That's because that's the only thing that appears there. The idea that Mr. First should have at some point said, hold up, I believe that there's something wrong with this. Again, the difference between something wrong with this and the representation about the number of engine hours is completely separate. The question here, specifically for their issue of the statute of limitations, is when should Mr. First have known, or did he specifically know that the engine hours representation was wrong? Not that there are machine issues, and again, their position requires Mr. First to engage in a duty to be suspicious. What do you do with counsel's citation of the Oklahoma statute of limitations? I don't believe the argument is that he had to know specifically what the issue is technically, but enough awareness of whatever the Oklahoma case is. Just what's your response to his Oklahoma law governing whatever he knew, when he knew? We would disagree with that. I have searched their brief. I did not see that case in their brief, but to argue the point specifically, there's a difference between knowing about fraud and buying a lemon. Mr. First testified he thought he had just bought a lemon. We know that there are lemon laws in every state. Let me ask the question a different way. Do you have a case that puts fraud claims in a different category than otherwise what operates in a tort, delictual statute of limitations, such as what he read? Is there some case we should be looking at, or that the jury should look at, that pivots? It either tolls the statute of limitations, creates a different limitation, or is it just a fact issue that's there? Your Honor, I think it's a fact issue. I am not aware of any other case that would indicate. I know there was a dispute as to the correct statute of limitations in the district court. It appears that those issues were not preserved for appeal, so it appears everyone agrees that it's a two-year. The jury has all these different dates, right? That's right. That's right, Your Honor. I actually disagree with that. The jury has one date, one complete date, which is April 13th of 2017. The jury has relative times. The jury was specifically instructed that Mr. First testified that he found out about the 990 hours in August of 2019. Succinctly put, what's the reversible error? Sure, Your Honor. The reversible error here is insufficiency of the jury verdict. The reversible error is insufficiency of the district court's instructions. The reversible error is insufficiency, confusion of the jury based upon the question that was posed to it because the question did not conform to the evidence. See, that sounds like an argument to me someone makes when they lose a case. I hate to be brutal about it, but that just sounds like to me what you say when you lose. I'm not saying he should have, but it just sounds like what you say when you lose. The jury instructions were bad. The jury was confused. The judge didn't understand it. The Fifth Circuit panel didn't understand the case we brought. They didn't read the record. The law clerks wrote the opinion. The staff attorneys wrote it. Nobody looked at the dash cams. Artificial intelligence did it. I'm being facetious, but I'm saying all that's what people say besides . . . Preserved argument to us is just insufficient evidence to support the answer to question three. There's no preserved instructional error, and you didn't object below to the answer to the jury question. I thought we just had one question, which is there evidence to support the statute of limitations? You're right, Your Honor. We do concede that, but I think the question about sufficiency of the evidence includes all of those issues. Those issues essentially dictate. They inform why the evidence was insufficient, because essentially the district court set the jury up to fail. We'd ask that this court reverse and remand. Thank you. All right. Appreciate it. The presentation of the case is different than what we normally have, so we appreciate the variety of being able to dig this one out, but we'll get the case decided as soon as we can. That concludes the cases for argument to the panel.